## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARSHALL SCHROEDER, et al.,** | : | **CIVIL NO. 3:12-CV-589** |
| | : | |
| **Plaintiff,** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **BANK OF AMERICA CORP. (BAC),** | : | |
| **GOLDBECK, MCCAFFERTY &** | : | |
| **MCKEEVER, P.C., et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This *pro se* civil rights action brought by Marshall and Zajari Schroeder represents the latest act in a five-year legal saga relating to on-going efforts by the Schroeders to avoid mortgage foreclosure.  As a result of the extensive legal proceedings relating to this mortgage, both in state court and in federal court, there is much about this case which is undisputed.

This case began in 2007 when the Plaintiffs fell behind in their mortgage payments due to financial difficulties which they were experiencing.  (Doc. 1, ¶32.) As a result, on March 1, 2007, the Defendants, working through the law firm of Goldbeck, McCafferty and McKeever, commenced mortgage foreclosure proceeding against the Plaintiffs.  (Id., ¶33.)  The Schroeders actively contested this mortgage foreclosure action for a period of time; filing legal objections to the action; making

demands of the mortgage holder pursuant to the Fair Debt Collection Act; moving to dismiss this state mortgage foreclosure action; and serving the bank with numerous discovery demands. (Id., ¶¶33-39.)

Ultimately, these efforts to contest this foreclosure in state court were unavailing. On March 7, 2008, the state court overruled the Schroeders objections to this foreclosure action. (Id., Ex, 4, pp.65.) When the Schroeders did not further respond to this action, judgment was entered in favor of the mortgage holder on April 2, 2008, (Id., ¶40), and the property was sold at a Sheriff's Sale on September 25, 2008. (Id., ¶ 41.) [1]

Three and one half years later, on March 30, 2012, the Schroeders filed the instant action in federal court. (Doc. 1.) This lawsuit explicitly calls upon the federal courts to set aside and vacate what is now a four year-old mortgage foreclosure judgment entered by the state court, demanding that we strike this judgment as void and set aside the September 2008 Sheriff's sale. (Id.) The Schroeders belatedly seek this extraordinary relief based upon a series of averments relating to alleged violations of Pennsylvania state law by the mortgage foreclosure counsel in their underlying state

---

[1]With this foreclosure action concluded, on November 5, 2008 an action in ejectment was filed in state court, and a judgment of possession was entered on April 6, 2009. On April 26, 2009, the Schroeders lodged objections to this action, styled as a "Release of Personal Property from Escrow." These objections were overruled by the state court on May 13, 2009, and this property–which was found vacant– was conveyed to a third party on April 30, 2010. (Doc. 9.)

case. (Doc. 1, ¶¶43-169.) Specifically, the Schroeders complain that the foreclosure counsel impermissibly allowed non-lawyers to file pleadings in foreclosure actions, acts which they allege violate state law. While the complaint provides a detailed discussion of this alleged practice by foreclosure counsel, focusing primarily on other foreclosure actions, nothing in the Schroeders' complaint explains how this practice adversely affected them. In particular, the complaint does not contest the Plaintiffs' default on their mortgage obligations, the triggering factual event which compelled this foreclosure. Quite the contrary, the complaint admits that the Plaintiffs failed to make these mortgage payments. (Id., ¶32.)

The *pro se* complaint is remarkable in one other respect. While filed in federal court, the complaint speaks almost exclusively to violations of state law, and provides virtually no reference to federal law. Indeed, beyond a jurisdictional assertion based upon Rule 60(b)(4) of the Federal Rules of Civil Procedure, and several fleeting and largely inscrutable references to the Fair Debt Collection Practices Act, the Plaintiffs' 64-page civil complaint provides no federal basis for jurisdiction in this case.

The Defendants responded to this *pro se* pleading by filing motions to dismiss this action. (Docs. 5 and 8.) These motions have been fully briefed by the parties, (Docs 6, 9, 11, 12, 13, and 14.), and are thus ripe for resolution.

For the reasons set forth below it is recommended that these motions to dismiss be granted.

## II.    Discussion

### A.    Rule 12(b)(6)– The Legal Standard

The Defendants have filed motions to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## B.    This Complaint Is Jurisdictionally Flawed

### 1.    There is No Diversity Jurisdiction

At the outset, we note that the Schroeders' *pro se* complaint is a jurisdictional enigma.  This jurisdictional ambiguity is significant because it is well-settled that federal courts are courts of limited jurisdiction.  Therefore, we can only exercise jurisdiction over a case to the extent that Congress has expressly conferred jurisdiction upon the courts.  As a general rule, there are two primary grounds for federal district court jurisdiction over a civil lawsuit.  First, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–(1) citizens of different States." 28 U.S.C. § 1332(a)(1).  This ground of federal jurisdiction, known as diversity jurisdiction, simply does not provide a basis for exercising jurisdiction in this particular case since the Schroeders' complaint plainly recites that the Plaintiffs and one of the Defendants, the Goldbeck law firm, are citizens and residents of Pennsylvania. (Doc. 1, ¶¶17 and 19.)  Given that the complaint reveals on its face that this lawsuit is not between citizens of different states, the Plaintiffs may not invoke diversity jurisdiction in this matter, and to the extent that this complaint is premised

on state law claims grounded upon diversity of citizenship, those claims should be dismissed.[2]

## 2. Rule 60(b)(4) Does Not Provide an Independent Ground of Jurisdiction

The Schroeders cannot save these otherwise flawed claims by citing to Rule 60(b)(4) of the Federal Rules of Civil Procedure, which permits a federal court to vacate a "void" judgment previously entered by another federal court. Indeed, the Schroeders fundamentally misconstrue the reach of Rule 60(b)(4). Contrary to the Plaintiffs' assertion, this rule does not provide a general license for federal courts to review state court judgments to determine whether they are void or voidable. Thus, a litigant simply cannot rely upon Rule 60(b)(4) to do what the Schroeders wish to do– seek an order from a federal court vacating some prior state court order.

This cardinal principle was recently underscored in <u>Reardon v. Leason</u>, 465 F. App'x 208, 209 (3d Cir.) <u>cert. denied,</u> 132 S. Ct. 2442 (2012), where the United States Court of Appeals for the Third Circuit rejected an attempt by a litigant to file "a motion pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure asking the court to issue an order directing the state court to void his criminal conviction because, due to the inappropriate and/or fraudulent actions of the defendants . . . , the state court

---

[2]Of course, the plaintiffs may still pursue these state claims in state court to the extent that they are permitted to do so by state law.

lacked jurisdiction over his case. See Fed.R.Civ.P. 60(b)(4) (providing that the court may relieve a party from a final judgment if the judgment is void)." In terms that are equally applicable here, the appellate court denied this request and "explained that Rule 60(b)(4) provides relief from judgment only when the court that rendered the judgment lacked jurisdiction over the subject matter or the parties, see Marshall v. Bd. of Educ., Bergenfield, N.J., 575 F.2d 417, 422 (3d Cir.1978)." Id.

Thus, " '[u]nder Rule 60(b)(4), a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.' Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 193 (2d Cir.2006)." Lipin v. Hunt, 573 F. Supp. 2d 830, 832 (S.D.N.Y. 2008). Here, the Schroeders cannot argue that the state courts utterly lacked jurisdiction to entertain this state mortgage foreclosure action involving parties and property located in Pennsylvania. Therefore, the Schroeders simply cannot rely upon Rule 60(b)(4) as an independent basis for asserting federal jurisdiction over this four-year old state mortgage foreclosure judgment.

### 3.      The Fair Debt Collection Act Claims of the Plaintiffs Are Not Adequately Pleaded

The second principal ground for invoking the jurisdiction of a federal court is known as federal question jurisdiction. Under this ground of jurisdiction, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. In this case, the Schroeders

may be attempting to invoke federal jurisdiction in this matter by advancing a claim pursuant to the federal Fair Debt Collections Practices Act, 15 U.S.C. §1692, *et seq*. (FDCPA). As pleaded, however, the Plaintiffs' FDCPA claims are both unavailing and unintelligible.

While in some narrowly defined instances law firms may be held liable under the FDCPA for their activities in mortgage foreclosure matters, such claims require strict adherence to federal pleading standards and must also set forth all of the elements of an FDCPA claim. <u>Barows v. Chase Manhattan Mortg. Corp.</u>, 465 F. Supp. 2d 347, 355 (D.N.J. 2006). Here, the Schroeders' claims do not meet these basic pleading standards. In fact, as to any FDCPA claims, in its current form the Plaintiffs' complaint consists of little more "than labels and conclusions, and a formulaic recitation of the elements of a cause of actions [which] will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Indeed, in this case to the extent that the Schroeders' FDCPA claim can be discerned, it apparently stems from the Defendants' alleged failure to respond to letters the Plaintiffs wrote to the Goldbeck law firm after this foreclosure began seeking verification of their debtor status. (Doc. 1, ¶¶33-37, 170.) Without the recital of further well-pleaded facts, it is entirely unclear how the FDCPA–a statute which generally regulates communications from debt collectors to debtors–is implicated by this correspondence which was written by debtors, the Schroeders, and sent to the law firm which was attempting to

collect this debt and foreclose upon this mortgage. Plainly, a clearer and more coherent factual recital is needed here in order to state a claim upon which relief may be granted.

Moreover, the Plaintiffs should also understand that an FDCPA claim will not entitle to them to vacate this state mortgage foreclosure judgment. Instead, relief under FDCPA is limited to damages, and the Act provides that:

> [A]ny debt collector who fails to comply with any provision of th[e] [FDCPA] with respect to any person is liable to such person in an amount equal to the sum of--
>
> **(1)** any actual damage sustained by such person as a result of such failure;
>
> **(2)(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.

15 U.S.C. § 1692k(a).

Therefore, to the extent that the Schroeders seek to rely upon the FDCPA to set aside or vacate this mortgage foreclosure they err, and to the extent that they seek damages under the FDCPA, their current complaint fails to state a claim upon which relief may be granted.[3]

---

[3] Given our recommendation that of this federal claim be dismissed we should also decline at this time to exercise supplemental jurisdiction over any state law claims brought by the Schroeders. Indeed, in this setting, where federal claims are dismissed by a court, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

**C.** **The Rooker-Feldman Doctrine and Issue Preclusion Rules Bar This Court From Entertaining Claims Which, In Effect, Compel Us to Set Aside State Court Mortgage Foreclosure Decisions**

As we have noted, this matter arises out of state mortgage foreclosure litigation which concluded in 2008 with the entry of a judgment of foreclosure against the plaintiffs in state court. Now some four years after the entry of this judgment, the plaintiffs have filed a complaint in federal court which necessarily invites this court to review, re-examine and reject state court rulings in the Schroeders' prior state mortgage foreclosure case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal

---

jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." <u>Bronson v. White</u> No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct. 15, 2007)(Caputo, J.)(adopting report and recommendation dismissing ancillary malpractice claim against dentist); <u>see Ham v. Greer</u>, 269 F. App'x 149, 151 (3d Cir. 2008)("Because the District Court appropriately dismissed [the inmate's] <u>Bivens</u> claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); <u>see United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Tully v. Mott Supermkts., Inc.</u>, 540 F.2d 187, 196 (3d Cir.1976).")

district courts to decline invitations to conduct what amounts to appellate review of

state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts,

reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal

district court of jurisdiction in some circumstances to review a state court

adjudication."  Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547

(3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal

courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries

Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," particularly where those lawsuits necessarily require us to re-examine state mortgage foreclosure rulings. See, e.g., Moncrief v. Chase Manhattan Mortgage Corp., 275 F. App'x 149 (3d Cir. 2008)(Rooker-Feldman doctrine precludes re-litigation of state mortgage foreclosure in federal court) ; Ayres-Fountain v. Eastern Savings Bank, 153 F. App'x 91 (3d Cir. 2005)(same); In re Knapper, 407 F.3d 5773 (3d Cir. 2005)(same); Downey v. Perrault, No. 09-1018, 2009 WL 3030051 (D.N.J. Sept. 15, 2009)(same); Easley v. New Century Mortgage Corp., No. 08-4283 (E.D. Pa. July 28, 2009)(same); Laychock v. Wells Fargo Home Mortgage, No. 07-4478, 2008 WL 2890962 (E.D.Pa. July 23, 2008)(same).

In the context of federal litigation challenging prior state mortgage foreclosure judgments a "claim is barred by Rooker-Feldman under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action

-15-

or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, Rooker-Feldman bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims." In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005). For purposes of applying this doctrine to federal lawsuits attacking prior state mortgage foreclosure cases: "A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment.... In other words, Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." In re Knapper, 407 F.3d at 581 (citations omitted).

Thus:

> "Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its own orders." In re Knapper, 407 F.3d 573, 580 (3d Cir.2005). "A mortgage foreclosure action depends upon the existence of a valid mortgage. . . . . [Therefore] If [plaintiff's] claim . . . were permitted to proceed and [plaintiff] obtained a favorable judgment, the resulting federal judgment would

necessarily negate the state court foreclosure judgment, a judgment which had been rendered prior to the commencement of [this action]. This result [would be] precisely the outcome prohibited by the <u>Rooker-Feldman</u> doctrine." <u>In re Madera</u>, 388 B.R. 586, 597-98 (E.D.Pa.2008) (dismissing TILA claim following default foreclosure judgment).

<u>Easley v. New Century Mortg. Corp</u>. 2009 WL 2256692 at *1.

Moreover, there is another, closely related threshold legal hurdle that the Schroeders must cross when endeavoring to bring this action. Entirely aside from the <u>Rooker-Feldman</u> doctrine, it is also well settled that an effort to use the federal courts to invalidate, challenge or:

> [R]elitigate [a state] foreclosure action, . . . , is prohibited by Pennsylvania's preclusion doctrine. Federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them. <u>See</u> <u>Rycoline Prods., Inc. v. C & W Unlimited</u>, 109 F.3d 883, 887 (3d Cir.1997). Under Pennsylvania law, claim preclusion is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action. <u>Balent v. City of Wilkes-Barre</u>, 542 Pa. 555, 669 A.2d 309, 313 (1995) (internal citations omitted).

<u>Moncrief v. Chase Manhattan Mortg. Corp</u>. 275 F.Appx. 149, 153 (3d Cir. 2008).

These preclusion rules also have substantive significance here. "In Pennsylvania, actions in mortgage foreclosure are dependent on the existence of a valid mortgage. Without a valid mortgage, there is simply nothing to foreclose upon." In re Calabria, 418 B.R. 862, 866-67 (W.D.Pa. 2009)(citations omitted). Therefore, the state foreclosure judgment in this case, which is premised upon a finding of a valid mortgage, rests upon legal grounds that cannot now casually be set aside by the federal courts.

In short, both the Rooker-Feldman doctrine and the claims preclusion principle are fatal to those counts of the Schroeders' complaint which seek to vacate this mortgage foreclosure judgment and set aside the Sheriff's sale in this case. Moreover, the Schroeders cannot avoid this result by asserting that Rooker-Feldman is inapplicable here simply because they believe that the state court judgment in this case is void in some way. In this regard, the Schroeders fundamentally misconstrue the reach of this exception to the Rooker-Feldman doctrine. The "rarely invoked 'void *ab initio*' exception to the Rooker–Feldman doctrine," Schmitt v. Schmitt, 324 F.3d 484, 487 (7th Cir. 2003), typically only applies in bankruptcy proceedings, and then is only applicable when it is apparent that "the state court lacked personal or subject matter jurisdiction. See, e.g., In re James, 940 F.2d 46, 52 (3d Cir.1991). But see In re Ferren, 203 F.3d 559, 560 (8th Cir.2000) (declining to create exception)." Schmitt v. Schmitt, 324 F.3d 484, 487 (7th Cir. 2003).

None of these conditions are met in the instant case. Here, the Schroeders cannot contend that their concerns over the document preparation practices of the Goldbeck law firm are so profound that they in some fashion deprived the state courts of personal or subject matter jurisdiction over this mortgage foreclosure matter involving parties and property located in Pennsylvania. Furthermore, the Schroeders do not dispute the existence of a mortgage and their default upon that mortgage in 2008. Given that the Schroeders have not alleged facts that would bring their case within the narrow confines of the "rarely invoked 'void *ab initio'* exception to the Rooker–Feldman doctrine," since they have not credibly alleged that "the state court lacked personal or subject matter jurisdiction" in this case, <u>Schmitt v. Schmitt</u>, 324 F.3d 484, 487 (7th Cir. 2003), the <u>Rooker-Feldman</u> doctrine applies here and bars these claims.

### D.    Many of The Schroeders' Claims Are Also Time-Barred

Finally, many of the claims advanced by the Schroeders in this action are also time-barred. For example, to the extent that the Schroeders are advancing a Fair Debt Collection Practices Act claim premised upon correspondence they mailed to the Goldbeck law firm in 2007 while this foreclosure litigation was pending in state court (Doc. 1, ¶¶33-37.), it is well-settled that:

> An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Where

> FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, courts are split as to when the FDCPA's one-year statute of limitations begins to run: some have held that such claims accrue upon filing the underlying collection action, <u>see</u> <u>Naas v. Stolman</u>, 130 F.3d 892, 893 (9th Cir.1997), while others use the date on which the purported debtor was served with the complaint. <u>See</u> <u>Johnson v. Riddle</u>, 305 F.3d 1107, 1113 (10th Cir.2002).

<u>Schaffhauser v. Citibank (S.D.) N.A.</u>, 340 F. App'x 128, 130-31 (3d Cir. 2009).  By either of these measures, the instant FDCPA claims– which were brought almost five years after the foreclosure action began, four years after the correspondence that inspired these claims, and some three and one half years after this foreclosure litigation drew to a close–are untimely and must be dismissed under the statute of limitations.  Further, we note that the Schroeders' FDCPA claims, which seem to rest upon the failure of the Goldbeck law firm to timely respond to correspondence from the Plaintiffs while this foreclosure action was pending, do not appear in any way to be dependent upon the Plaintiffs' current assertions that pleadings were improperly filed by non-attorneys employed by that law firm.  Therefore, the accrual of these particular claims would not be subject to equitable tolling due to any alleged delays in discovering how these pleadings were prepared by this law firm.

Similarly, the Schroeders' state law claims, which seek to set aside the September 2008 Sheriff's sale in this case, are subject to the six month limitation period prescribed by state law for: "[a]n action or proceeding to set aside a judicial

sale of property." 42 Pa. C. S. A § 5522(b)(5). A straightforward application of this six month limitations period to the Schroeders' claims, therefore, compels the conclusion that these state claims seeking to set aside this judicial sale of property are also time-barred.

While this limitations period may be extended under state law based upon a continuing wrong theory, the plaintiffs must make an exacting showing to avail themselves of this ground for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)). See also Lake v. Arnold, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1)

subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent . . . . See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, the Schroeders have alleged that the Goldbeck law firm's document processing practices give rise to their state law claims which justify setting aside this mortgage foreclosure judgment and Sheriff's sale. Even if we accepted this novel claim, and tolled the statute of limitations until the Plaintiffs discovered these allegedly improper document preparation procedures, the Plaintiffs' complaint acknowledges that the Schroeders knew of these practice in July of 2011, some eight months before they filed this lawsuit. (Doc. 1, ¶42.) Therefore, the Schroeders cannot rely upon a continuing wrong theory to extend this six month statute of limitations, and these state law claims which seek to set aside this foreclosure sale remain time-barred.

## III. Recommendation

Here, the Plaintiffs' complaint on its face appears to suffer from multiple, profound defects. It is time-barred, runs afoul of the <u>Rooker-Feldman</u> doctrine, fails to properly invoke federal jurisdiction, and fails to state a claim upon which relief may be granted. In sum, in its current form this complaint fails on numerous scores to state a claim upon which relief may be granted, and it is unclear that any of these defects can be cured.

While this merits analysis calls for dismissal of this action in its current form, the court may to consider providing the plaintiffs one, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint, if they can, which addresses all of the deficiencies noted in this Report and Recommendation. The Court may consider this course, out of an abundance of caution, mindful of the fact that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). While the nature, and number of the deficiencies noted in this Report and Recommendation make it highly unlikely that the Plaintiffs can plead facts which would support these

claims, the Court may still wish to provide the Plaintiffs with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the Plaintiffs to comply with the rules governing civil actions in federal court, provided the Plaintiffs act promptly.

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' Motions to Dismiss be GRANTED (Docs. 5 and 8.), but that the Plaintiffs' complaint be dismissed without prejudice to the Plaintiffs endeavoring to correct the defects cited in this report, provided that the Plaintiffs act within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of November 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge